Filed
D.C. Superior Court
11/10/2020 16:58PM
Clerk of the Court

DISTRICT OF COLUMBIA SUPERIOR COURT
Civil Division

A Kevin Fahey,                                          Jury Trial Demanded
5303 Birds View Lane
Unit D
Alexandria Virginia    22312                       **2020 CA 004662 B**
Representative Plaintiff

v.

The Folgers Coffee Company
One Strawberry Lane,
Orrville, OH 44667
    Defendant


Plaintiff  A Kevin Fahey ("Plaintiff"), by and through his counsel, brings this action against the defendant named above on behalf of the General Public of the District of Columbia (the "DC General Public"), and alleges the following based upon information, belief and the investigation of counsel:

**NATURE OF CASE`**

1.  This is a representative action brought on behalf of Plaintiff and the DC general public who purchased Defendant's coffee, in particular sizes.

2.  In short, the Defendant sells its coffee in cannisters with suggested serving sizes based on a tablespoon per serving.  However, if a purchaser follows the suggested serving size, the number of servings actually produced by the consumer is about two thirds that indicated. Further, as many of the products are nearly a pound of loose coffee, and consumers are likely to consumer the same over at least a matter of weeks, consumers are not likely to keep track of the total number of servings consumed, and therefore not likely to detect the fraud.

3. Plaintiffs and the DC General Public accordingly suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth herein, and seek appropriate relief.

4. The Plaintiff and the General Public seek to enjoin such fraud, obtain damages on behalf of the Plaintiff, and obtain an injunction against further such conduct in the District of Columbia

### JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action, and venue is appropriate in this Court, pursuant to D.C. Code §§ 11-921 and 28-3905(k)(1).

6. This Court has personal jurisdiction over the Defendant pursuant to D.C. Code §13-423, as Defendant sells its products at stores throughout Washington, D.C., and derives substantial revenues therefrom.

7. In addition, a substantial part of the actions which gave rise to the cause of action at issue occurred in this jurisdiction.

**THE PARTIES**

8. Plaintiff Keven Fahey is a resident of Virginia.

9. Defendant the Folgers Coffee Company is an  Delaware corporation located in Ohio.

**LEGAL FRAMEWORK - THE INTERESTS OF THE DC GENERAL PUBLIC MEMBERS AND THE GENERAL PUBLIC AND THE DC CONSUMER PROTECTION**

10. The District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.,* prohibits unlawful trade practices.  The prohibited trade practices include, in relevant part, actions that

  (a)  represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have

  (b). represent that goods have characteristics, uses, or benefits that they do not have;

  (d) represent that goods or services are of particular standard, quality, gade, style, or model, if in fact they are of another

  (e) misrepresent as to a material fact which has a tendency to mislead;

  (f) fail to state a material fact if such failure tends to mislead;

  (f-1), use innuendo or ambiguity as to a material fact, which has a tendency to mislead

  (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; and

  (x) to sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 318 of the District of Columbia Code, Official Code, or by operation or requirement of federal law.

Section 3904.

11. Additionally, "the CPPA's extensive enforcement mechanisms apply not only to the unlawful trade practices proscribed by § 3904, but [also] to all other statutory and common law prohibitions." *Osbourne v. Capital City Mortgage Corp*., 727 A.2d 322, 325-26 (D.C. 1999).

12. Prior to 2000, only a "consumer" could bring a private action under the CPPA.  However, in 2000, the City Council amended the CPPA to allow a "person" to bring an action on behalf of the general public of the District of Columbia.

13. The CPPA such a "Representative Action" to seek, as forth in more detail below, numerous remedies on behalf of the general public of the District of Columbia, D.C.  Code § 28-3905(k)(1).

14. Plaintiff brings this action on behalf of himself and as a Representative acting for the interests of the general public of the District of Columbia, seeking relief from Defendant's

use of trade practices in violation of laws of the District of Columbia, pursuant to D.C. Code § 28-3905(k)(1).

15. The defendant's product as described herein is a "consumer good", and the defendant is a "merchant" within the meaning of the CPPA.  D.C. Code § 28-3901(1)(2) and (7).

**THE FAHEY PURCHASE**

16. On May 18th , 2020, Mr. Fahey purchased a can of Folgers Coffee from the Safeway at 1100 4th Street, SW, Washington DC  A copy of the receipt, and photos of the product packaging are set forth as Figures 1-3, infra.

*Figure 1*



*Figure 2*



*Figure 3*



17. Under the CPPA, such purchase is all that is necessary to give Mr. Fahey standing to be the

Representative in this action. D.C. Code § 28-3905(k) (2001) (whose 2000 amendments

replaced the word "consumer" with "person") and now specifies

(k)(1) An individual may, on behalf of that individual, or on behalf of both
the individual and the general public, bring an action seeking relief from the
use of a trade practice in violation of a law of the District when that trade
practice involves consumer goods or services that the individual purchased

or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes

18. The remedies available include:

> (A) treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;
> (B) reasonable attorney's fees;
> (C) punitive damages;
> (D) an injunction against the use of the unlawful trade practice;
> (E) in representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or
> (F) any other relief which the court deems proper.

19. The basis for Mr. Fahey's standing and the manifestation of his alleged injury in fact is similar to that in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982).

20. In *Havens,* a national housing rights organization had a black applicant and a white applicant submit identical resumes to an apartment complex for housing.  The purpose of the applications was not to obtain housing; instead, the purpose was to determine whether or not the apartment complex was engaged in racial discrimination.   The housing complex approved the application of the white applicant, but denied the application of the black applicant.

21. The *Havens* court held that the black application had standing to sue for damages, <u>even though he never had any intention of moving into the apartment</u>.

22. There, the Court determined that § 804(d) of the Fair Housing Act "established an enforceable right to truthful information concerning the availability of housing," id. at 373, 102 S.Ct. 1114, and thus, plaintiffs were injured in fact and had standing to sue because of "deprivation of information about housing availability."

23. In *Molovinsky v. Fair Employment Council*, 683 A.2d 142 (1996), the DC Court of Appeals

upheld the theory of tester liability.   In *Molovinsky*, in response to complaints that a

prospective employer, Executive Suites, was violating the rights of a Mr. Henderson by

harassing him during a job application violating Mr. Henderson's rights under DC law, the

DC Fair Employment Commission designed a gender discrimination  program and arranged

four testers, two men and a woman to pose as job seekers and visit Executive Suite.  *Id* at

145.

24. As each tester had the same experience as Mr. Molovinsky, the FEC sued Executive Suites,

alleging violation of the employment laws. The jury awarded damages verdicts, including

punitives, for not just Mr. Henderson, but also the individual testers. *Id* at 145.

25. Citing *Havens*, the DC Court of Appeals upheld the standing of the plaintiffs to bring suit,

even though they had engaged in the interviews for the sole purpose of investigating

whether or not unlawful activity was taking place.

26. Consistent with the above case law, the legislative history of the CPPA's 2000 amendments

creating Representative Actions makes it clear that reliance is not required

27. According to the 2012 DCCPPA Amendment Committee Report (the "Report"), "tester

standing" was created to allow consumers who offer to purchase, or actually purchase,

products or services with the intent of determining whether those products or services are

what they claim to be, to file suits against untruthful merchants. See D.C. Council, Report

on Bill 19-0581 at 4-5 (November 28, 2012).  The Report states that "consumers need not

actually have been misled by a misrepresentation regarding a consumer good or service to

have suffered an injury-in-fact giving rise to an actionable claim." *Id* at 4.  The Report

further states that "[l]ike the testers in *Havens* and *Molovinsky*, D.C. consumers must be

allowed to offer to purchase, or actually purchase, products or services with the intent of

determining whether those products or services are what they claim to be." *Id* at 5.

28. Consistent with the above precedent, in *Grayson v. AT & T Corp.*, 15 A. 3d 219 (DC 2011), a former employee of a telecommunications firm was aware that the firm was failing to escheat unused funds on prepaid telephone calling cards to the District of Columbia, as required by law. *Id* at 249-252.

29. In order to have standing to sue the company to cease this practice (again, with full awareness the product was 'defective", and with no intention of using the product), the *Grayson* plaintiff purchased such telecommunications card.  *Id.*

30. The DC Court of Appeals, invoking the *Havens* ruling, upheld the standing of said purchaser of prepaid telephone calling card to sue for alleged violations of the CPPA. Consistent with *Havens*, the Supreme Court ruled as such even though, as noted above, the plaintiff was an industry insider who knew when he purchased the product that it had the defects at issue.  *Id.*

31. Further, the DC City Council had suspended funding of enforcement by the DC Attorney General's Office of the CPPPA. *Id* at 240.

32. Therefore, the liberal standing requirements conferred by *Grayson* on private plaintiffs are consistent with the intent of the DC City Council to "provide public interest organizations and private attorneys the ability to seek injunctive relief and disgorgement of ill-gotten gains in the public interest".  *Id* at 240.

33. Post *Grayson* case law has largely followed its mandate.  *See Julian Ford v. ChartOne, Inc.*, 908 A.2d 72, 83 (D.C. 2006) (holding that the definition of consumer transaction under D.C. Code § 28-3901(a)(7) includes "consumer purchases of business opportunities, and purchase of medical records for a lawsuit qualifies as purchasing a business opportunity") (emphasis

added) *accord*, *Mostofi v. Mohtaram, Inc.*, 2013 D.C. Super. LEXIS 12 (November 12, 2013), in which a resident of Maryland bringing a CPPA §3905(k)(1) action bypassed supermarkets in Maryland to purchase Superior Court of the District of Columbia was held to have standing "to test whether that EVOO was "true extra virgin olive oil"), with the court noting:

> Ultimately, neither the intent of Plaintiff nor whether he 'manufactured' standing are dispositive of the question. No precedent establishes that the Court must apply a 'good faith' standard to the actions of a plaintiff in order to find that the standing requirement has been met. Further, Plaintiff . . . does not need to demonstrate that he suffered any physical, emotional, or monetary injury; an actual or immediate statutory violation is sufficient to establish an injury-in-fact. . . . The motivations of the plaintiff in *Julian Ford* are similar to Plaintiff; both bought a good for the purpose of advancing litigation. At the very least, Plaintiff qualifies as a consumer that engaged in a consumer transaction for the purchase of a business opportunity as defined in Julian Ford . . . In the alternative, Plaintiff bought a bottle of Pompeian for personal consumption or to test that bottle, which does not disqualify Plaintiff under ….. D.C. Code § 28-3901(a)(7).
> . . . .
> If there is a genuine dispute of material fact whether Defendant misrepresented and sold EVOO of Italian origin, the harm would not be self-inflicted upon Plaintiff's purchase of Pompeian; rather the harm of an unlawful trade practice occurred once Defendant offered to sell that bottle of Pompeian in its store."

*Id* at *7 (emphasis added, internal citations omitted).

34.    In short, § 3905(k)(1) does not require reliance on the part of the plaintiff.  More significantly, for the instant case, the language of the statute references purchases to "test" or to "evaluate".  This means the plaintiff can not only do the testing himself, but also can evaluate, relying on the testing of others.

I.    The Deceptive Practices of the Defendant

35. Beginning in 1850 in San Francisco, Folgers is now a household name recognized and sold
    around the world. Since the early 1990s, it has been the largest-selling ground coffee in the
    United States. In the 1980s, Folgers' slogan "The best part of waking up is Folgers in your
    cup!" and the well-associated jingle became recognizable in households across the country,
    along with the Folgers name. Folgers generates millions of dollars in sales each year, a
    significant portion of which is derived from sales of the items at issue herein (the "Coffee
    Products") in the District of Columbia.  In 2008, Folgers was acquired by J.M. Smucker
    from Procter & Gamble for a reported $3 billion.

36. . Folgers coffee is now a household name with sales comprising a significant portion of the
    $7.8 billion in net sales reported by its corporate parent during the last fiscal year.  The
    coffee giant excels in offering a wide range of products to customers, including varying
    flavors, roasts and strength of coffee.

37. Notwithstanding its unmatched success, the coffee giant engages in widespread false and
    deceptive advertising on its staple coffee cannisters, depriving consumers of the benefit of
    the bargain.  In a practice that clearly offends reasonable consumer expectations, Defendant
    engages in a classic bait-and-switch scheme that causes unsuspecting consumers to spend
    more money for less than the advertised amount of coffee they believe they are purchasing.
    The packaging and labeling of many Folgers coffee   product cannisters (the "Coffee
    Products") prominently advertise that they will produce an   amount of six fluid ounce cups
    when, in fact, they do not, and the label's advertised cup   yield is completely arbitrary.

38. In Plaintiff's case, the cannister purchased—Folgers French Roast, Med-Dark —
    prominently advertises on its front label that it "MAKES UP TO 210 6 FL OZ CUPS."

Instructions on the back panel of the cannister direct consumers to use the following measurements: "Cold Water: 1 Serving (6 fl oz)" with "Folgers Coffee: 1 Tablespoon" which yields "1 Serving (6 fl oz.)". This means that each French Roast cannister should contain 210 tablespoons of coffee. However, if the back-panel instructions are followed, the cannister only produces approximately 156 six fluid-ounce-servings, 54 short of what is advertised on the front panel. The cannister only contains approximately 156 tablespoons of ground coffee. The same French Roast cannister also comes up short if the coffee is brewed in bulk and the back-panel's second instruction is followed. This instruction directs users to use "Cold Water: 10 Servings" with "1/2 Measuring Cup"[1] for "10 Servings." If 8 tablespoons generate 10 servings, then 156 tablespoons—the entirety of the cannister—produces 195 six fluid-ounce-servings, [2] 215 cups short of what Folgers represents on its front panel.

39. Other Coffee Products used to engage in the same scheme, which are also the subject of this action, are depicted in the chart in Para 41, below. These include several of Defendant's roasts in various strengths and sizes. In each Coffee Product, the top right corner of the front panel prominently and conspicuously states the number of cups the cannister will produce, as shown in the French Roast cannister Plaintiff purchased: The back panel contains the serving instructions "for best brewing results" and, significantly, goes on to state "This cannisters makes up to 210 suggested strength/10".

40. But the only serving suggestions on the product are those provided immediately above this statement, as set forth in Paragraph 38 and depicted below:

---

[1] or 8 tablespoons
[2] 2 8/10 =156/195   6 fl oz servings."

41. As stated in in Paragraph 38, above and depicted below, these instructions or suggestions do not produce 210 servings. Consumers reasonably expect that if they follow the serving instructions, the Coffee Products will produce the number of servings/cups of coffee prominently advertised on their front and back panels. However, they do not.  Tests performed on various sizes of the Coffee Products, including the cannister purchased by Plaintiff, showed that Defendant uniformly and systematically misrepresents its Coffee Products, as set forth below:

| Coffee Product | Strength | Weight | Advertised number of Cups per coffee Product | Actual Measured Number of Cups (at 1Tbsp per 1 cup serving | Measured Number of Cups (at 8 Tbsp per 10 cup servs) |
|---|---|---|---|---|---|
| Folgers Gourmet Supreme | Med-Dark | 686 g | 210 | 156 | 195 |
| Folgers Classic Roast | Medium | 865 g | 240 | 175 | 219 |
| Folgers Breakfast Blend | Mild | 720 g | 210 | 152 | 190 |
| Folgers Simply Smooth | Mild | 882 g | 240 | 176 | 220 |

42. . At no time does Defendant inform consumers as to the true number of cups a Coffee Product will yield if the back-panel instructions are followed, or that they will not result in the advertised amounts of servings. Nor does Defendant inform consumers how at all it derived the "Makes Up To" figure stated on its front and back panels.

43. Plaintiff and the General Public relied to their detriment on Defendant's representations regarding the amount of servings each Coffee Product would produce and would not have paid to purchase Defendant's Coffee Products, or would not have paid as much as they did for said products, had they known the truth about the Coffee Products' actual serving yield according to its instructions. As a result, Plaintiff and the General Public suffered monetary damages as a result of Defendant's deception and misrepresentations. Folgers' advertising and marketing of its Coffee Products is false, misleading and/or omits material information to consumers because consumers such as the General Public expect that if the Coffee Product's back panel instructions are followed, the cannister will yield the advertised number of cups, which are prominently displayed on the front panel and restated on the back

panel of the cannister. However, nowhere on the Coffee Product packaging/label does Defendant notify consumers that the Coffee Product will not yield the number of cups represented if the instructions are followed.  Nor does Coffee Product packaging/label indicate how many cups will actually be produced if the instructions are   followed, or even how the purchaser can brew the coffee to produce the advertised "Makes   Up To" number of cups. Instead, the "Makes Up To __ Cups" serving figure is completely   arbitrary.[3] This combination—the misrepresented "Makes Up To __ Cups" and the backpanel instructions resulting in the less servings—renders labeling of the Coffee Products inherently misleading**.**

44. The back-panel instructions of each Coffee Product clearly state that   consumers should use either one tablespoon of ground coffee per six fluid-ounce-serving   or a 1/2 cup (8 tablespoons) per ten six-ounce servings "for best brewing results." No other   brewing suggestions, recommendations or instructions appear on the Coffee Products. Yet, Defendant completely fails to provide any methodology or measurements whatsoever as to how a Coffee Product can be brewed to produce the "Makes Up To __ Cups" amount that it advertises. Defendant similarly fails to indicate: (1) how many servings will result from following the instructions contained on the back panel and (2) that following the instructions will produce less than the "Makes Up To __ Cups" figure. These misrepresentations and omissions violate consumers' reasonable expectations and, as alleged herein, California's consumer protection statutes. The number of servings a Coffee Product yields according to its instructions can be determined with objective factual evidence, which shows that each Coffee Product is falsely advertised.

---

[3] For instance, without any type of qualification or brewing instructions, consumers could   conceivably produce 500 cups of coffee from a cannister if the coffee grounds were diluted enough.

45. Throughout the relevant time period defined below, Defendant has engaged in, and continues to engage in, an advertising and marketing campaign that misrepresents its Coffee Products.  Defendant has engaged in, and continues to engage in, a pattern of willful conduct, through affirmative misrepresentations and/or material omissions, designed to mislead and lure consumers into purchasing Coffee Products they would not have otherwise purchased. As a result of this deception, Defendant has sold thousands of Coffee Products to unsuspecting consumers across the District of Columbia through various channels

46.  Defendant's advertising claims are false, misleading and deceptive because   Defendant willfully misrepresents and omits from its labeling of the Coffee Products   material information to consumers' purchasing decision—viz. the number of coffee   servings that each Coffee Product will produce. Defendant, thus, intentionally misleads   consumers into purchasing its products based on its false advertising of the Coffee Products     as having characteristics that they, in fact, do not have.

47. In making these false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would purchase the Coffee Products and pay more for them under the false but reasonable belief that each would produce more coffee servings than each Coffee Product actually does.  The marketing of the Coffee Products as producing more coffee servings than they actually do demonstrates Defendant's awareness that the claim about the Coffee Products' serving yield is material to consumers, otherwise Defendant would not so prominently advertise how many cups of coffee each Coffee Product cannister produces.

48. Defendant's deceptive representations and omissions are material in that a   reasonable person would attach importance to such information and would be induced to   act upon such information in making purchasing decisions. The General Public   reasonably relied—to their detriment—on Defendant's misleading representations and omissions. Such representations and omissions misled the General Public and are likely to mislead the public, because, as alleged above, reasonable consumers understand that if they follow the only brewing instructions on the product, the Coffee Product will produce up to its advertised number of servings.

49. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured the General Public in that they: (1) paid a sum of money more for a Coffee Product that   was not what Defendant represented; (2) were deprived of the benefit of the bargain   because the Coffee Products they purchased were different than what Defendant had   advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products   they purchased had less value than what Defendant represented.

50. Had Defendant not made the false, misleading, and deceptive representations   and omissions as alleged herein, the General Public would not have purchased the Coffee Products or would not have paid as much for them. Consequently, the General Public suffered injury in fact and lost money or property as result of   Defendant's wrongful conduct.

## II.    The Reliance of The General Public on the Defendant's Representations

51. The General Public was exposed to, read, and relied upon Defendant's claims upon the Products' labeling and packaging that were intended to appeal to consumers, such as themselves, who are interested in products with real vanilla flavor.

52. Such claims are false, and the Plaintiff seeks to enjoin such conduct and obtain injunctive relief and attorneys fees.

**Count 1**
**Violation of the CPPA**
**Implied and Express Warranties**
**Section 3904(x)**

53. Plaintiff incorporates the allegations of paragraphs 1 through 52 as though fully set forth herein, and alleges further:

54. As noted above, the CPPA, §28-3904, provides that is it a violation "whether or not any consumer is in fact mislead, deceived or damaged thereby" for any person to , inter alia, "sell consumer goods in a condition or manner not consistent with state or federal law."

55. Section 313 of the D.C. UCC (DC Code § 28:313 provides:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and become part of the basis of the bargain creates an express warranty that the goods shall conform the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation does not create a warranty.

D.C. Code § 28-314 provides:

(a) Unless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  Under this section, the serving for value of food or drink to be consumers either on the premises or elsewhere is a sale.

(b) Goods to be merchantable must be at least such as . . .

( i ) In the case of fungible goods, are of fair average quality within the description; and

(ii) Are fit for the ordinary purposes for which such goods are used; and

(iii) Are adequately contained, packaged, and labeled as the agreement may require; and

(iv) Conform to the promises or affirmations of fact made on the container or label, if any.

56. Plaintiff and DC consumers have purchased the Product from the Defendant.  The above-referenced warranties apply to the Product.  The Defendant has failed to honor these warranties.

57.  The Product is not merchantable because it is neither fit for the ordinary purpose for which such good are not, nor conforms to the promises or affirmations covered.

58. §28:2-607 (3) (A) requires that a buyer must within a "reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy;"

59. Plaintiff's counsel, on behalf of him and the DC Public, have given such notice.

60. Defendant's breaches of its Express Warranties and the Implied Warranty of Merchantability, and its sale of consumer goods in a condition and in a manner inconsistent with D.C. law and contrary to the operation and requirements of federal law constitute unlawful trade practices, which violate the rights of the Plaintiff and the DC General Public as protected by the CPPA.  D.C. Code § 28-3904(x).

**Count 2 –**
**Violations of the CPPA –**
**Various subsections**

61. Plaintiff incorporate the allegations of paragraphs 1 through 52 as though fully set forth herein, and alleges further:

62. By marketing the Product in the manner described above, the Defendant violated the various provisions of Section 3904 of the CPPA, set forth in more detail in paragraph 10, page 3 above, in particular, Section 3904 (f-1), "use innuendo or ambiguity as to a material fact, which has a tendency to mislead."

63. Further, the representations as to Product are a violation of §3904(x).

64. Such violations are actionable under the CPPA, and make the relief requested below appropriate.

III.   PRAYER FOR RELIEF

WHEREFORE, as to Count I and II of the Complaint, Plaintiff, on behalf of the general public of the District of Columbia, asks this court to award:

statutory or actual damages, trebled, for Plaintiff Kevin Fahey, except Mr. Fahey disclaims any damages in excess of $74,000;

attorneys' fees; and

an injunction against the Defendant's' violations of the CPPA; and

any other relief this court deems just and proper.

Respectfully Submitted

_Thomas C. Willcox_
Thomas C. Willcox, Attorney at Law
DC Bar No 445135
1701 16th Street, N.W
Suite 211
Washington DC   20009
Tel: 202.338.0818
T.C. 202.234.0892
thomaswillcox@willcoxlaw.com.co

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

A. Kevin Fahey et al

v,

_____ Plaintiff

The Folgers Coffee Company
One Strawberry Lane
Orrville, OH 44667

Case Number  2020 CA 004662 B

_____ Defendant

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Thomas C. Willcox
_____
Name of Plaintiff's Attorney

1701 16th Street, NW #211
_____
Address
Washington DC 20009

202 338-0818
_____
Telephone

Clerk of the Court

By _____
Deputy Clerk

Date  11/12/2020

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주세요     የአማርኛ ተርጓሚ ለማግኘት  (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov



A. Kevin Fahey et al

v,

The Folgers Coffee Company
One Strawberry Lane
Orrville OH  44667

_____
Demandante

Número de Caso: _____

_____
Demandado

**CITATORIO**

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le requiere entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le requiere presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Thomas C. Willcox
_____
Nombre del abogado del Demandante

*SECRETARIO DEL TRIBUNAL*

1701 16th Street, NW, #211
_____
Dirección
Washington DC  20009

Por: _____

Subsecretario

202 338-0818
_____
Teléfono

Fecha _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 번역을 원하시면 (202) 879-4828로 전화해 주십시오.    ኢትዮጵያ፡ ትርጉም፡ ለማግኘት፡ (202) 879-4828    ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                                    Super. Ct. Civ. R. 4



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

A KEVIN FAHEY
   Vs.                                                      C.A. No.      2020 CA 004662 B
THE FOLGERS COFFEE COMPANY

## INITIAL ORDER AND ADDENDUM

   Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

   (1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

   (2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum.  The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

   (3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

   (4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

   (5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133.  Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

   (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                  Chief Judge Anita M. Josey-Herring

Case Assigned to: Judge JASON PARK
Date:         November 12, 2020
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, February 12, 2021
Location:   Courtroom 519
             500 Indiana Avenue N.W.
             WASHINGTON, DC  20001

# ADDENDUM TO INITIAL ORDER AFFECTING
# ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides, "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:** (AUDIO ONLY/Dial-in by Phone):

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the **Audio Alternative**

**Option 2:** (LAPTOP/ DESKTOP USERS 1):

Open Web Browser in Google Chrome and copy and paste following address from the next page:
https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3:** (LAPTOP/ DESKTOP USERS 2):

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com  Select **Join**, enter the Meeting ID from the next page

**AUDIO ALTERNATIVE**:  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4:** (Ipad/SMART PHONE/TABLET):

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option** #2

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

|  | 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|---|
|  | 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
|  | 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
|  | 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
|  | 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
|  | 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
|  | JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
|  | A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
|  | B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
|  | B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
|  | B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
|  | B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |